13-2003.131-JCD                                          November 7, 2013

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

```
CHRISTINE ABEL, JOHN ABEL, SR.,      )
JOHN ABEL, JR., and NICHOLAS ABEL,   )
                                     )
          Plaintiffs,                )
                                     )
     v.                              )   No. 13 C 2003
                                     )
VILLAGE OF SCHAUMBURG, JOHN CICHY,   )
MATTHEW HUDAK, TERRANCE O'BRIEN,     )
ALAN TAKEI, VILLAGE OF HANOVER PARK, )
JOSEPH CIANCIO, STEVEN CORTESE,      )
VICTOR DIVITO, STEVEN STOTZ,         )
MATTHEW MCDONNELL, MARK ATKINSON,    )
and DANIEL KOSARTES,                 )
                                     )
          Defendants.                )
```

### MEMORANDUM OPINION

Before the court are the motions of defendants Village of Schaumburg, Matthew Hudak, John Cichy, and Terrance O'Brien to stay these proceedings until criminal proceedings pending against Hudak, Cichy, and O'Brien in the Circuit Court of DuPage County are resolved. For the reasons explained below, the motions are granted in part and denied in part.

### BACKGROUND

This is § 1983 civil-rights action filed by four members of the Abel family, who live in Schaumburg, Illinois, against the Villages of Schaumburg and Hanover Park as well as several police officers from each municipality. Plaintiffs are John Abel, Sr. and

- 2 -

Christine Abel and their two sons, John Abel, Jr. and Nicholas Abel; we will refer to them by their first names to avoid confusion. The individual defendants are Matthew Hudak, John Cichy, Terrance O'Brien, and Alan Takei, who at the time of the alleged events were Schaumburg police officers, and Joseph Ciancio, Steven Cortese, Victor DiVito, Steven Stotz, Matthew McDonnell, Mark Atkinson, and Daniel Kosartes, who were Hanover Park police officers.

The complaint, which we take as true for purposes of this discussion, alleges the following. On March 14, 2012, certain officers, including Ciancio and Cortese, went to the Abels' home looking for a person who no longer lived there. Nicholas and John Jr. were home when the officers arrived. Nicholas then left via the back door and was approached by Ciancio and Cortese, who handcuffed and arrested him, without probable cause or other justification, and placed him in a police car. Additional police officers then arrived, including Hudak, Cichy, O'Brien, and Takei, and then entered and searched the Abels' home without a warrant or justification. By that time, John Jr. had left the home, so no plaintiff was present in the home at the time of the search.

Christine then came home; the officers would not let her inside, nor would they allow her to speak with Nicholas. Hudak, among other officers, asked her for consent to search the home; when she replied that she wanted to consult a lawyer, he threatened

- 3 -

that if she refused consent, the officers would get a search warrant, enter the home, and "fuck it up." Christine called a lawyer, and after speaking with the lawyer, refused consent. At some point during this time period, John Sr. came home.

Some of the defendant officers, including Cortese and Hudak, then proceeded to obtain a search warrant for the home. A number of police officers--nearly all of the defendants--then searched the home again. During the search, the officers caused property damage and seized money that belonged to plaintiffs. The officers inventoried only some of the money that was seized; they allegedly stole the rest.[1]

Nicholas, Christine, and John Sr. were "taken to" the Hanover Park police station. (Compl. ¶ 43.) Cortese and DiVito questioned Nicholas, who denied any illegal conduct. It is alleged that Ciancio, Cortese, and DiVito caused felony charges for possession of a controlled substance and possession of cannbis over 500 grams to be brought against Nicholas, with no probable cause. These charges were dismissed at Nicholas's bond hearing.

During this same time period, at or near 285 Mayfair Lane in Schaumburg,[2] Morales and Stotz arrested John Jr., who had left the Abel home when officers first arrived. The officers took John Jr.

---

[1] It is further alleged that the defendant officers "seized and converted approximately $4,000.00" of plaintiffs' money; it is unclear whether this is the total amount of money that was seized or the amount that is alleged to have been stolen.

[2] The complaint does not explain whose address this is.

- 4 -

to the ground, fracturing his hand. He was brought to the Hanover Park police station, where he was interrogated by Cortese and DiVito. John Jr. requested medical treatment, which Cortese and DiVito denied. Ciancio, Cortese, and DiVito then caused multiple felony charges for drug-related offenses to be brought against John Jr.

It is alleged that the defendant officers "conspired and acted together to cover up" several things: (1) "the illegal and unauthorized search and entry of" the Abel home; (2) "the illegal seizure of" plaintiffs' cash; and (3) the false arrest of, and false criminal charges brought against, Nicholas. According to plaintiffs, the defendant officers agreed to falsify police reports, criminal complaints, and other documents and agreed to testify falsely, consistently with the falsified documents, and gave false and incomplete versions of the events to other officers in order to cover up their own misconduct.

The complaint contains eight counts: Nicholas's § 1983 claim against Ciancio and Cortese for false arrest (Count I); Nicholas's state-law claim against Ciancio, Cortese, and DiVito for malicious prosecution (Count II); all plaintiffs' § 1983 claim against all defendants for illegal search of their home (Count III); all plaintiffs' § 1983 claim against all defendants for illegal seizure of property (Count IV); John Jr.'s § 1983 claim against Cortese and DiVito for denial of medical attention (Count V); all plaintiffs'

- 5 -

§ 1983 claim against all defendants for civil conspiracy (Count VI); Nicholas's *respondeat superior* claim against Hanover Park (with regard to his malicious prosecution claim) (Count VII); and all plaintiffs' indemnification claim against Hanover Park and Schaumburg. Plaintiffs seek compensatory and punitive damages as well as attorneys' fees and costs.

Schaumburg has filed a motion, which Hanover Park joins, to stay this matter. Defendants Hudak, Cichy, and O'Brien have filed a separate motion to stay, which asserts similar arguments. The motions are based on the fact that shortly before plaintiffs filed their complaint, the DuPage County State's Attorney's Office had indicted Hudak, Cichy, and O'Brien on seventeen felony charges that include theft, burglary, unlawful drug conspiracy, unlawful delivery of controlled substances, armed violence, and official misconduct. Schaumburg seeks a stay of the entire case "until the resolution of" the criminal case, Schaumburg's Mot. at 1, or, in the alternative, "a limited stay with respect to the claims" against Schaumburg and its officers, "while allowing discovery to proceed as against the Village of Hanover Park defendants," Schaumburg's Mot. at 6 n.3.

## **DISCUSSION**

Determining whether to grant a stay because of parallel criminal litigation involves balancing the interests of the parties and the public. The non-exclusive factors considered by courts in

- 6 -

this district include the following: "(1) whether the civil and criminal matters involve the same subject; (2) whether the governmental entity that has initiated the criminal case or investigation is also a party in the civil case; (3) the posture of the criminal proceeding; (4) the effect on the public interest of granting or denying a stay; (5) the interest of the civil plaintiff in proceeding expeditiously, and the potential prejudice the plaintiff may suffer from a delay; and (6) the burden that any particular aspect of the civil case may impose on defendants if a stay is denied." Cruz v. City of Chicago, No. 08 C 2087, 2011 WL 613561, at *2 (N.D. Ill. Feb. 15, 2011) (citing Chagolla v. City of Chicago, 529 F. Supp. 2d 941, 945 (N.D. Ill. 2008) and Cruz v. County of DuPage, No. 96 C 7170, 1997 WL 370194, at *2 (N.D. Ill. June 27, 1997) (citing cases)). "The proponent of a stay bears the burden of establishing its need." Clinton v. Jones, 520 U.S. 681, 708 (1997).

We believe that these factors weigh in favor of staying this case as to the Schaumburg defendants and allowing the case to proceed as to the Hanover Park defendants. It is not clear that the pending state criminal case involves the particular incidents with the Abel family, but it does involve the same type of alleged misconduct. Hudak, Cichy, and O'Brien are charged in the criminal case with, among other things, illegally searching and falsely arresting people in furtherance of a scheme to skim drugs and

money.  Plaintiffs point out that they are not listed as possible witnesses in the State's disclosures to defendants in the criminal case and that the State is not a party to this case.  It is conceivable, however, that the misconduct upon which plaintiffs' complaint is based could be part of the State's case against the three defendants.  Hudak, Cichy, and O'Brien's alleged misconduct is also relevant to the indemnification claim asserted against Schaumburg in this case.  And although defendant Alan Takei is the only Schaumburg officer in this case who has not been indicted, a stay as to the other Schaumburg defendants should, for reasons of practicality, include Takei.

The predominant consideration is the burden that this case would impose on Hudak, O'Brien, Cichy, and Schaumburg if a stay is denied.  To avoid waiving their Fifth Amendment privilege against self-incrimination in the criminal case, Hudak, O'Brien, and Cichy would have to assert the privilege in this case, but that would permit an adverse inference to be drawn.  See Baxter v. Palmigiano, 425 U.S. 308, 318 (1976).  Moreover, pursuant to these defendants' bond conditions in the criminal case, they cannot communicate with each other, which could impede their ability to defend this case.  The public interest also favors a stay.  As noted by some of our colleagues in similar civil-rights cases currently pending in this court against Hudak, O'Brien, and/or Cichy (nearly all of which have been stayed), while the public may have an interest in the

prompt resolution of civil litigation, it has a significant interest in seeing that criminal proceedings are not tainted by parallel civil proceedings. See Altom v. Vill. of Schaumburg, No. 13 C 1076, Order of May 22, 2013 (Kocoras, J.); Gilbert v. Mir, No. 13 C 2687, Order of July 26, 2013 (Kendall, J).[3]

The criminal case was filed in January of this year, two months before the filing of the instant case. Plaintiffs contend that the criminal case could last for two years or more, but this is mere speculation. There is some prejudice to plaintiffs that is inherent in a delay of this case, but it is not the catastrophic picture that plaintiffs paint, and this concern does not weigh as heavily as does the burden upon defendants. Moreover, the prejudice to plaintiffs will be lessened by permitting discovery to proceed as to Hanover Park and its officers. We acknowledge that Hanover Park joins in the Schaumburg defendants' motions, but it has offered no reason why discovery cannot proceed as to that entity and its own defendants, to the extent that the discovery will not have to be repeated once the stay is lifted as to the

---

[3]/ In addition to Gilbert (which has been reassigned from Judge Kendall's docket to Judge Ellis) and Altom, the other civil-rights cases pending in this district against defendants (or a subset of them) that have been stayed are the following: Thomas v. Hudak, No. 13 C 5684 (Kocoras, J.); Warren v. Cichy, No. 13 C 4928 (Norgle, J.); Nelson v. Village of Schaumburg, No. 13 C 3227 (Leinenweber, J.) (stay pending as to individual defendants); and Beasley v. Cichy, No. 13 C 1281 (Durkin, J.) (by agreement). A motion for entry of a stay has recently been filed and is pending in Holmstrom v. Village of Schaumburg, 13 C 5696 (Bucklo, J). In Miller v. Village of Schaumburg, 13 C 1601 (Shadur, J.), the defendants' motions for entry of a stay were denied under different circumstances: the plaintiff agreed not to seek an adverse-inference instruction in the event that the individual defendants asserted their Fifth Amendment privilege.

- 9 -

Schaumburg defendants. If necessary, we can revisit a stay of the case concerning the Schaumburg defendants if discovery is completed as to the Hanover Park defendants and the criminal case does not appear to be close to resolution.

## CONCLUSION

For the foregoing reasons, the motions of defendant Village of Schaumburg [30] and defendants Matthew Hudak, John Cichy, and Terrance O'Brien [32] to stay this matter are granted in part and denied in part. Discovery is stayed until further order of court as to defendants Hudak, Cichy, O'Brien, Takei, and the Village of Schaumburg, and those defendants will not be required to file a responsive pleading until further order of court. Discovery may proceed as to defendants Ciancio, Cortese, DiVito, Stotz, McDonnell, Atkinson, Kosartes, and the Village of Hanover Park. A status hearing is set for November 20, 2013 at 11:00 a.m. to discuss a discovery plan as to those defendants.

DATE:     November 7, 2013

ENTER:    _____
          John F. Grady, United States District Judge